IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WARREN BOYD MARKER,

    Petitioner,

v.                                                                                   No. 1:18-cv-00719-JB-LF

FNU LATHORP, Warden,
and ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on petitioner Warren Boyd Marker's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed July 26, 2018. Doc. 1. Respondents initially filed a limited answer addressing exhaustion, and they later filed an answer addressing the merits of Mr. Marker's petition. Docs. 10, 12. United States District Judge James O. Browning referred this case to me to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 2. Having considered the parties' submissions, the relevant law, and the record in this case, I recommend denying Mr. Marker's claims and dismissing this case with prejudice.

### I.    Factual Background and Procedural History

On May 1, 2014, a jury found Mr. Marker guilty of larceny (over $2500), unlawful taking of a motor vehicle, burglary of a vehicle, and criminal damage to property (under $1000). Doc. 10-1 at 1–3 (Ex. A).[1] Mr. Marker was sentenced to a total term of imprisonment of eighteen and

---

[1] The exhibits referenced are attached to the New Mexico Attorney General's Limited Answer to Warren Marker's *Pro Se* Petition for Writ of Habeas Corpus (Doc. 10). The Court cites to the CM/ECF pagination rather than any internal page numbers in the exhibits.

a half years, with six years suspended, for an actual term of imprisonment of twelve and a half years.  *Id*. at 4.  Mr. Marker appealed, and on August 10, 2016, the New Mexico Court of Appeals vacated Mr. Marker's conviction for unlawful taking of a motor vehicle on double jeopardy grounds and remanded for resentencing.  Doc. 10-1 at 91–98 (Exs. M and N).  Mr. Marker was resentenced to a total term of imprisonment of thirteen years, with four years and two months suspended, for an actual term of imprisonment of eight years and ten months.  Doc. 10-1 at 7–10 (Ex. B).  He was given credit for his pre-sentence confinement, time served since his original judgment and sentence, and all good-time credits received in prison.  *Id*. at 8.

On May 1, 2017, while still awaiting resentencing, Mr. Marker filed a petition in this Court for a writ of habeas corpus under 28 U.S.C. § 2254.  *See* Case No. 1:17-cv-00508-KG-LF, Doc. 1.  He raised three arguments in his petition:  (1) the state failed to preserve evidence; (2) he was denied effective assistance of counsel; and (3) he was deprived of a speedy trial.  *Id*. at 6–10.  Mr. Marker indicated in his petition that he had not raised these issues in his direct appeal, and that although he tried to file a state habeas petition two months earlier, the state "court refused to receive [the] writ."  *Id*. at 3, 6–8.  Mr. Marker stated he was now seeking federal habeas relief because he felt the state courts were "not responding" to him.  *Id*. at 5.

On September 27, 2017, I issued an order directing Mr. Marker to "show cause in writing why his § 2254 federal petition should not be dismissed for failure to exhaust state court remedies."  Case No. 1:17-cv-00508-KG-LF, Doc. 5 at 3.  In response, Mr. Marker filed a motion seeking a 60-day extension of the show cause deadline.  Case No. 1:17-cv-00508-KG-LF, Doc. 6.  In his motion, Mr. Marker stated that after receiving the show cause order, he filed a

state habeas petition with New Mexico's Twelfth Judicial District Court on October 5, 2017,[2] a copy of which the court returned to him with the file stamp "received for review" on "10-10-17." *Id*. Although he was "hopeful that the [state habeas] process will continue to move forward," Mr. Marker asked the Court to

> maintain its involvement for the 60 day continuance he is asking for. He is more than confident that at the end of the time requested[,] if the state court has not proceeded in accordance with Rule 5-802 NMRA[,] [governing the screening of habeas petitions] . . . [he] will be more than able to show cause why this Court should rule on the 2254 Petition.

*Id.* at 2. The Court denied Mr. Marker's requested extension on the ground that it "cannot perform such oversight or otherwise rule on habeas claims that are simultaneously pending before a state court." Case No. 1:17-cv-00508-KG-LF, Doc. 7 at 3. Because Mr. Marker had not exhausted his state court remedies and was now in the process of doing so, his first federal § 2254 petition was dismissed without prejudice. *Id*. at 3–4.

In his state habeas petition, Mr. Marker raised the same three arguments as his § 2254 federal petition: (1) the state failed to preserve evidence; (2) he was denied effective assistance of counsel; and (3) he was deprived of a speedy trial. Doc. 10-2 at 1–5 (Ex. O). Although the state district court received Mr. Marker's habeas petition on October 10, 2017, the court did not docket the petition in a new case or in the original criminal proceeding. *See* Docket, No. D-

---

[2] Although Mr. Marker indicated in the motion that he filed the state habeas petition on October 5, 2017, he verified under oath in his petition that he placed the petition in his correctional facility's internal mail system on October 4, 2017. *See* Doc. 10-2 at 4–5 (Ex. O); *see also* Rule 5-802(F) NMRA (stating that a "petition is deemed to be filed with the clerk of the court on the day the petition is deposited in the institution's internal mail system for forwarding to the court provided that the petitioner states within the petition, under penalty of perjury, the date on which the petition was deposited in the institution's internal mail system").

3

1226-CR-2013-00240.[3]  The court instead forwarded a copy of the petition to the state public defender department, which filed a notice on December 1, 2017, in Mr. Marker's original criminal case recommending that the court deny the habeas petition because it "objectively fails to establish that any of [Mr. Marker's] [c]onstitutional rights were violated during the proceedings that resulted in his conviction at jury trial."  Doc. 10-2 at 41 (Ex. P).

Beyond forwarding Mr. Marker's petition to the public defender department for review, the state district court took no further action on the petition.  After some months elapsed without any additional activity, Mr. Marker filed a pro se motion on February 20, 2018, seeking to dismiss his criminal convictions or modify his judgment and sentence to a sentence of time served with immediate release.  Doc. 10-2 at 45–46 (Ex. Q).

While awaiting a ruling from the district court on his state habeas petition and the motion to dismiss, Mr. Marker sought relief three times from the New Mexico Supreme Court.  He first filed a petition on April 13, 2018, for a writ of superintending control and request for stay.  Doc. 10-2 at 49–99 (Ex. S).  That petition was denied on April 24, 2018.  Doc. 10-2 at 100 (Ex. T).  The next month, Mr. Marker filed another petition—this time seeking a writ of mandamus.  Doc. 10-2 at 101–20 (Ex. U).  On May 23, 2018, the petition for a writ of mandamus was denied.  Doc. 10-2 at 121 (Ex. V).  He then filed a third petition—this time seeking a writ of certiorari

---

[3] The Court has reviewed the official record in Mr. Marker's state court proceedings through the New Mexico Supreme Court's online Secured Odyssey Public Access (SOPA) system.  The Court takes judicial notice of the official New Mexico court records in Mr. Marker's state cases, No. D-1226-CR-2013-00240, No. M-32-FR-2012-00054, No. S-1-SC-36991, No. S-1-SC-37050, and No. S-1-SC-37096.  *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining that the Court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand); *Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) (unpublished) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed. R. Evid. 201).

under Rule 12-501 NMRA.  Doc. 10-2 at 122–48 (Ex. W).  On June 14, 2018, the New Mexico Supreme Court denied the petition for a writ of certiorari.  Doc. 10-2 at 149 (Ex. X).

On September 18, 2018, the state district court denied Mr. Marker's motion to dismiss as untimely filed.  Doc. 10-2 at 47–48 (Ex. R).  The court's order did not mention Mr. Marker's state habeas petition.  To date, the state district court has not docketed Mr. Marker's state habeas petition, nor has it entered any orders regarding the petition.

On July 26, 2018, Mr. Marker filed the § 2254 federal habeas petition that is presently before the Court.  Doc. 1.  Mr. Marker raises the same three claims for relief that he raised in his state habeas petition.  *Id*.  He asserts that he has exhausted his state court remedies because he filed a state habeas petition in state district court and also sought relief from the New Mexico Supreme Court.  *Id*. at 4.  He contends that the state district court "failed to file" and "refuse[d] to rule" on his state habeas petition and further, that the New Mexico Supreme Court denied all three of his petitions.  *Id*. at 3–4.

On June 18, 2019, I ordered Respondents to file a limited answer addressing whether Mr. Marker had exhausted his state court remedies.  Doc. 6.  Respondents filed an answer conceding exhaustion.  Doc. 10.  I then ordered Respondents to file an answer addressing the merits of the petition.  Doc. 11.  On August 7, 2019, Respondents filed their answer regarding the merits of Mr. Marker's three claims for relief.  Doc. 12.

**II.    Exhaustion and Standard of Review**

The provisions of 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (AEDPA), govern this case.  A federal district court may not consider the merits of a habeas petition brought pursuant to 28 U.S.C. § 2254 unless the petitioner "has exhausted the remedies available in the courts of the State."  28 U.S.C.

5

§ 2254(b)(1)(A). To exhaust state court remedies, a petitioner must "properly present[ ]" the issue "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted). Under 28 U.S.C. § 2254(b)(3), the exhaustion requirement may be expressly waived.[4] In this case, Respondents have, through counsel, conceded that Mr. Marker has exhausted his state court remedies. Doc. 10 at 5–6 (stating that "there is no question that Mr. Marker did everything within his power as an incarcerated *pro se* petitioner to give the state courts 'a *fair* opportunity to act on [his] claims" and as such, they do "not dispute that Mr. Marker has exhausted available state-court remedies by raising in both his state habeas and certiorari petitions the same three grounds for relief that he now sets forth in his 28 U.S.C. § 2254 petition"). Respondents therefore have waived any exhaustion defense, and I will consider the merits of the three claims Mr. Marker raises in his petition.

"Under AEDPA, the standard of review applicable to a particular claim depends upon how that claim was resolved by the state courts." *Cole v. Trammell*, 755 F.3d 1142, 1148 (10th Cir. 2014).

> If a claim was addressed on the merits by the state courts, our standard of review is governed by 28 U.S.C. § 2254(d).[5] If a claim was not resolved by the

---

[4] 28 U.S.C. § 2254(b)(3) provides that:

> A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

[5] 28 U.S.C. § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

6

    state courts on the merits and is not otherwise procedurally barred, our standard of
    review is more searching.  Because § 2254(d)'s deferential standards of review do
    not apply in such circumstances, we review the district court's legal conclusions
    de novo and its factual findings, if any, for clear error.

*Id.*; *see also Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003) ("When state courts have not adjudicated a petitioner's claim on the merits, the AEDPA standards do not apply; instead, we review questions of law de novo and questions of fact for clear error.").

    In this case, the state district court did not rule on the merits of Mr. Marker's claims. And although the New Mexico Supreme Court issued a final order denying Mr. Marker's petition for a writ of certiorari, the order did not specify the reason for the denial—whether it was based on an adjudication of the merits or a denial because there was no final order from the district court for the supreme court to review.  *See* Rule 12-501 NMRA (providing that petitions for writs of certiorari seeking review of denials of habeas corpus petition must be filed "within thirty (30) days of entry of the district court's order denying the petition").  Respondents contend that the Court need not decide whether this is a case where § 2254(d)'s deferential standards of review apply because even under the more stringent de novo standard of review, Mr. Marker's three claims for relief fail.  Doc. 12 at 5.  As discussed below, I agree with Respondents that Mr. Marker's claims lack merit even under a de novo standard of review.

---

    (1) resulted in a decision that was contrary to, or involved an unreasonable
    application of, clearly established Federal law, as determined by the
    Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination
    of the facts in light of the evidence presented in the State court proceeding.

7

### III.     Analysis of the Merits of Mr. Marker's § 2254 Petition

    A.  Claim 1: Failure to Preserve Evidence

Mr. Marker's convictions stemmed from taking a shop trailer that housed a Harley Davidson motorcycle from a residential property. At trial, photos of the trailer and motorcycle were admitted as exhibits, and the owner testified regarding their market value. *See* May 1, 2014 Jury Trial Transcript (Tr.) at 11:35 – 11:56, No. D-1226-CR-2013-00240. This was the only evidence presented at trial regarding the value of the items; Mr. Marker did not present any evidence either rebutting the owner's testimony or establishing an alternate market value.

In his habeas petition, Mr. Marker contends that he was deprived of the opportunity to have the items "appraised for value or proof of ownership, which determines the degree of felony," because the state photographed the items and then returned them to the owner shortly after Mr. Marker was arrested. This argument is without merit.

A criminal defendant may use the legal process to compel production of a privately owned vehicle for an independent inspection. *See, e.g.*, *State v. Vargas*, 1994-NMCA-041, ¶¶ 15–19, 117 N.M. 534, 538, 873 P.2d 280, 284. There is no indication in the record that Mr. Marker sought access to the items in order to independently assess their market value. Nor is there any indication that Mr. Marker's defense counsel was ever prevented by the state courts from using discovery or other legal processes, such as a subpoena, to seek access to the items. Mr. Marker does not argue that the state lost or destroyed the items, or that it acted in bad faith when it returned the items to the owner. He also does not challenge the owner's testimony as being insufficient to support the jury's determination regarding value. Indeed,

> an owner of personal property may testify concerning the value of the property and [] such testimony is sufficient to support a jury's determination of value . . . [because] the owner necessarily knows something about the quality, cost, and

condition of his or her property and consequently knows approximately what is worth.

*State v. Hughes*, 1988-NMCA-108, ¶ 8, 108 N.M. 143, 145–46, 767 P.2d 382, 384–85; *see also United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966) ("It is the general rule that an owner, because of his ownership, is presumed to have special knowledge of the property and may testify as to its value."). In short, Mr. Marker has not established a constitutional violation on this issue.

### B. Claim 2: Speedy Trial

Mr. Marker next asserts that he was deprived of a speedy trial. Doc. 1 at 7. He claims that his competency evaluation was completed by December 2012, but the state court "took another 18 months to trial and 6 more months to sentence [him]." *Id.* Mr. Marker does not identify whether he is raising a federal claim or one based on New Mexico state law. Because errors of state law are not cognizable in federal habeas actions, I construe this as a Sixth Amendment claim for violation of Mr. Marker's right to a speedy trial. *See* 28 U.S.C. § 2254(a) (stating that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "This right attaches when the defendant is arrested or indicted, whichever comes first." *United States v. Larson,* 627 F.3d 1198, 1207 (10th Cir. 2010) (quotations omitted). The Supreme Court established a four-part balancing test in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972) "to determine whether a delay in post-indictment proceedings violates a defendant's constitutional right to a speedy trial." *United*

9

*States v. Medina*, 918 F.3d 774, 780 (10th Cir. 2019). "The four factors are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. No single factor is determinative or necessary—instead, all four are considered to determine whether a violation has occurred." *Id*. (internal quotation marks, alterations, and citations omitted).

The first factor, the length of the delay, serves as a "gatekeeper," and the other three factors are examined only when the delay is so long that it is "presumptively prejudicial." *United States v. Frias*, 893 F.3d 1268, 1272 (10th Cir. 2018). "Delays approaching one year generally satisfy the requirement of presumptive prejudice." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). "The length of delay is measured from the time at which the speedy trial right attaches." *Id*. In this case, Mr. Marker was arrested on June 14, 2012, and charged by criminal complaint the day after his arrest.[6] The case was bound over to state district court on October 25, 2013.[7] Mr. Marker was then charged by criminal information in state district court on November 21, 2013, and his jury trial commenced on May 1, 2014.[8]

Respondents argue that Mr. Marker's right to a speedy trial did not attach until November 2013, when he was charged by criminal information in district court. Doc. 12 at 8; *see also State v. Ross*, 1999-NMCA-134, ¶¶ 13–15, 128 N.M. 222, 225–26, 991 P.2d 507, 510–11 (holding that an indictment or information must be filed in a felony prosecution to trigger a defendant's

---

[6] *See* Criminal Complaint (filed June 15, 2012, in New Mexico State Magistrate Court in Lincoln County, New Mexico), No. M-32-FR-2012-00054; *see also* May 1, 2014, Jury Trial Transcript (Tr.) at 2:13:50 (officer testimony regarding when Mr. Marker was arrested), No. D-1226-CR-2013-00240.

[7] *See* Docket, No. M-32-FR-2012-00054.

[8] *See* Docket, No. D-1226-CR-2013-00240.

Case 1:18-cv-00719-JB-LF   Document 14   Filed 04/23/20   Page 11 of 16

speedy trial right; the filing of a complaint in magistrate court is insufficient).  Because Mr. Marker's case proceeded to a jury trial approximately six months after the criminal information was filed, Respondents contend that the length of delay is not presumptively prejudicial, and the Court need not consider the remaining *Barker* factors.  Doc. 12 at 8.  Mr. Marker disagrees, arguing that his speedy trial right attached on the date he was arrested in 2012, and that the delay until his trial—which was just shy of 24 months—is presumptively prejudicial.  Doc. 1 at 7.  Even assuming that Mr. Marker's speedy trial right attached at the time of his arrest and that the delay until his trial was presumptively prejudicial, I find that the other three *Barker* factors, on balance, overcome that presumption and weigh against finding a speedy trial violation.

The second *Barker* factor concerns the reasons for the delay.  The record reflects that competency proceedings accounted for the vast majority of the delay in Mr. Marker's case.  Generally, a criminal defendant cannot establish a denial of his Sixth Amendment right to a speedy trial if the reason for the delay is to determine competency.  *See Johnson v. United States*, 333 F.2d 371, 374 (10th Cir. 1964) ("Appellant can not complain of the denial of his constitutional right to a speedy trial because of his confinement in a State mental institution . . . for the very purpose of determining his competency to stand trial."); *United States v. Summers*, 479 F. App'x 159, 161–62 (10th Cir. 2012) (unpublished) (finding no Sixth Amendment violation where 14-month delay between arraignment and guilty plea was due to defense counsel filing motion challenging defendant's competency and resulting mental health evaluation that took six months to complete); *United States v. Murphy,* 241 F.3d 447, 454 (6th Cir. 2001) (time for competency evaluation on request of a defendant's attorney excludable under Speedy Trial Act, despite client's objection to the request).

11

In this case, the state magistrate court ordered a competency evaluation at defense counsel's request approximately one month after Mr. Marker's arrest.[9] Competency proceedings then took fifteen months to complete, and the case was bound over to district court immediately after the magistrate judge found Mr. Marker competent to stand trial.[10] The case then proceeded to trial six months later on May 1, 2014, which was the date initially set by the district court in its scheduling order.[11] Because competency proceedings accounted for nearly all of the delay in Mr. Marker's case and there were no delays in trying the case once it was bound over to state district court, I find that this factor does not weigh in Mr. Marker's favor.

The third *Barker* factor also does not weigh in Mr. Marker's favor because there is no indication that Mr. Marker ever asserted his speedy trial right in district court. *See United States v. Stine*, 664 F. App'x 697, 702 (10th Cir. 2016) (unpublished) (finding that third *Barker* factor weighed against defendant because he failed to "assert[] his Sixth Amendment right in district court"). As to the fourth *Barker* factor, Mr. Marker fails to demonstrate that he was prejudiced by the delay. Prejudice should be assessed in light of a defendant's interest "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Mr. Marker does not allege that the delay impaired his defense by depriving him of the use of any evidence or the ability to call witnesses. *See United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015) (finding no impairment to defense because defendant "does not argue that the delay resulted in the loss of specific evidence or the unavailability of certain witnesses"); *Castro v. Ward*, 138

---

[9] *See* No. M-32-FR-2012-00054, July 23, 2012 entry.

[10] *See* No. M-32-FR-2012-00054, October 10, 2013 entry.

[11] *See* No. D-1226-CR-2013-00240, December 6, 2013 entry.

F.3d 810, 820 (10th Cir. 1998) (finding no impairment to defense because petitioner "has not claimed that any specific witness or evidence was somehow rendered unavailable or less persuasive because of the passage of time"). Nor does Mr. Marker assert that he suffered oppressive pretrial conditions, unusual anxiety or "any special harm . . . which distinguish[ed] his case from that of any other arrestee awaiting trial." *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994). On balance, I find that the pretrial delay in Mr. Marker's case does not rise to the level of a constitutional violation. This claim, therefore, should be denied.

### C. Claim 3: Ineffective Assistance of Counsel

In his third and final claim for habeas relief, Mr. Marker contends that he was denied effective assistance of counsel because his attorney "failed to monitor [the] case or prepare any defense even after regular phone calls and letter's [sic] asking why [the] case was not proceeding. The only contact with counsel was [the] day befor[e] trial." Doc. 1 at 8. Courts evaluate ineffective assistance of counsel claims under the two-prong approach established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018). To establish an ineffective assistance of counsel claim, Mr. Marker "must show both that his counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" *Id.* (internal citations omitted; emphasis in original).

"When evaluating whether counsel's performance was deficient, the question is whether the representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal citations and quotation marks omitted). "Judicial review under this standard is highly deferential, and we strongly presume that an attorney acted in an objectively reasonable manner and that an attorney's

challenged conduct *might* have been part of a sound trial strategy." *Id.* (internal citations and quotation marks omitted). "Furthermore, we must judge the reasonableness of counsel's challenged conduct on the specific facts of the case viewed as of the time of counsel's conduct." *Id.* (internal citations, alterations, and quotation marks omitted).

"Even if counsel performed in a constitutionally deficient manner, [Mr. Marker] is not entitled to relief unless he can prove actual prejudice." *Id.* To demonstrate prejudice, Mr. Marker must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal citation omitted).

The record does not support Mr. Marker's contentions that his counsel did not communicate with him in advance of trial or failed to prepare any defense. Defense counsel moved for a competency evaluation while the case was in magistrate court, and once bound over, defense counsel timely made a discovery demand and filed trial-related documents such as witness lists—all actions that demonstrate that counsel was actively preparing Mr. Marker's defense.[12] In addition, though Mr. Marker claims that his only contact with defense counsel was the day before trial, the record shows that defense counsel communicated with Mr. Marker at earlier hearings such as Mr. Marker's arraignment in district court and the competency-related proceedings in magistrate court.[13]

---

[12] *See* No. M-32-FR-2012-00054, July 9, 2012 entry (Notice of Emergency Hearing on Defendant's Mental Status); No. D-1226-CR-2013-00240, November 27, 2013 entries (filing notice of discovery demand and witness list).

[13] *See* No. M-32-FR-2012-00054, October 15, 2013 entry (Competency Order); No. D-1226-CR-2013-00240, January 31, 2014 entry (Transcript of Arraignment).

14

Furthermore, even if the record had supported Mr. Marker's claims regarding his counsel's performance, he makes no argument as to how the conduct prejudiced him at trial. *See Strickland*, 466 U.S. at 687 (requiring a showing "that [counsel's] deficient performance prejudiced the defense"). He has not shown a reasonable probability that but for his counsel's alleged deficient performance, the result of his trial would have been different. *See West v. Bryant*, 763 F. App'x 652, 665 (10th Cir. 2019) (unpublished) (affirming denial of ineffective assistance of counsel claim based on trial counsel's failure to communicate because the petitioner "omit[ted] any argument as how this prejudiced him at trial"). Therefore, Mr. Marker's ineffective assistance of counsel claim should be dismissed.

### D. Certificate of Appealability

Lastly, I address whether Mr. Marker is entitled to a certificate of appealability. No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only if Mr. Marker "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, I find that Mr. Marker has failed to make the requisite showing of a violation of a constitutional right. Mr. Marker therefore is not entitled to a certificate of appealability.

## IV. RECOMMENDATION

I recommend that the Court deny Mr. Marker's claims and dismiss this case with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge